**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**UTICA DIVISION**

_____

THE COLLINS HOMESTEAD LLC;
T. RAYMOND COLLINS BREWERY (d/b/a
HARRY'S BARN; ) ;  CYNTHIA M. COLLINS,
individually and as Member of the COLLINS
HOMESTEAD LLC;  BARBARA A. GRIFFIN,              Civil Action No: 6:26-CV-1005 (AJB/CBF)
Member of The Collins Homestead LLC; )
RICHARD B. GRIFFIN, individually;

                                             Plaintiffs,                    COMPLAINT
                     v                                      FOR
                                         VIOLATION OF CIVIL RIGHTS
                                         PURSUANT TO
TOWN OF PARIS, NEW YORK;                        42 U.S.C. §§ 1983 and 1985(3),
JAMES S. CHRISTIAN, JR. a/k/a JC CHRISTIAN,     THE FOURTEENTH AMENDMENT,
in his official and individual capacities;       THE FIRST AMENDMENT AND
GINA LAMONTE, in her official and individual       RELATED STATE CLAIMS
capacities; MICHELE PARKER, in her official
and individual capacities; KEVIN FAHY,
individually; GARY TUTTLE, individually;
THOMAS O'BRIEN, ESQ., individually;
KENNETH L. BOBROW, individually;
ANTHONY G. HALLEK,, individually; and
FELT EVANS, LLP.,

                                 Defendants.

_____

## PRELIMINARY STATEMENT

1. This is a civil rights action brought pursuant to 42 U.S.C. §§ 1983 and 1985(3) for

violations of the Equal Protection Clause, the Due Process Clause, the First

Amendment of the United State Constitution and for violation of New York Agriculture and Markets Law §305-a and related state claims, and seeks declaratory relief, injunctive relief including an immediate stay of a state court May 1, 2026 permanent injunction order of a protected farm operation, compensatory damages, punitive damages and attorneys fees pursuant to 42 U.S.C. §1988. The Order of May 1, 2026 was the culmination of a multi-year coordinated campaign by municipal and state actors - documented in the municipality's own records, in the code officer's own handwriting, in a sworn affirmation from a disinterested third party and in a town attorney's written complaint to the New York State Liquor Authority that was directly contradicted by documents sitting in his own client's files; among other actions under color of law, the goal was to violate common law property rights, interfere with a state-licensed agricultural operation and to obstruct the issuance of a Certificate of Occupancy or a Certificate of Compliance which the municipality's own file shows has been professionally certified as warranted. This Court's intervention is urgently required. The barn known as "Harry's Barn" was the target and the key.

2. For years, the Town of Paris, New York - despite its own files holding professional certifications of structural soundness by a NYS licensed structural engineer and satisfactory code compliance reviews by a NYS licensed architect, design professionals' inspections of the Plaintiff's barn and signed, sealed affidavits and design documents attesting to the barn's code compliance - have destroyed Plaintiffs'

2

farm in the process of targeted and constitutionally violative rejection of all legal attempts by Plaintiffs to meet the requirements of the NYS Fire Prevention and Building Code (Existing Building subpart) to open an A2 Assembly licensed taproom in Harry's Barn under color of Local Law #1 of 2010 and Local Law #1 of 2022, which allowed the Town of Paris to assume from the State of New York the agency of acting as Authority Having Jurisdiction over enforcement of the building code.  NYS code officers are appointed as public officers under an oath which requires and compels support the US and New York State Constitutions.  Public officers also hold a responsibility to conduct their duties ethically, obediently to the law and not to allow personal feelings or prejudices to influence decisions.  Since 2018, Plaintiffs have been subjected to the  rejection of plans, inspections and code reviews with ever changing goalposts in a concerted effort to defy the NYS AML §305-a protections against unreasonable code enforcement and to commit a "taking" of Plaintiffs personal and real property within the context of code enforcement and under color of state law.  The intentional violations of Plaintiffs constitutional rights is evident.

**3**.  Documentation including fraudulently concealed records, show that a similarly situated church owned barn conducted an A2 Assembly commercial event barn open to the general public since at least 2017, with zero code enforcement, zero compliance demands, zero health department reviews, zero performance reviews, zero structural inspection reports, zero construction plans.

3

4.    A state court complaint, filed on May 8, 2023,  contained material misrepresentations completely ignoring earlier state agency and state court reviews and decisions in Plaintiffs' favor;  instead describing the Plaintiffs "business" not as a protected farm brewery operation in a zone which allowed the use and permitted as of right, but as a "bar/tavern" with entertainment prohibited by the zoning ordinance. Further, Plaintiffs uses were not only permitted by the zoning ordinance but by two New York State agencies with authority - the NYS Liquor Authority and the NYS Dept of Ag & Markets.

5. Plaintiffs bring this action for violations of the Equal Protections Clause, the Due Process Clause and the First Amendment of the United States Constitution and for violations of NYS Agriculture and Markets Law §305-a and related state court claims, and seeks declaratory relief, injunctive relief including an immediate stay of the May 1, 2026 permanent injunction closing the entire farm operation with no conditions to open ever again;  compensatory damages, punitive damages, and attorney fees pursuant to 42 U.S.C. § 1988.

6.  As a brief history,  Plaintiffs,d/b/a The Collins Homestead LLC, operating as T. Raymond Collins Brewery d/b/a Harry's Barn. The brewery — named in honor of

4

their father — was established in reliance upon the express invitation and encouragement of the town officials who personally urged Plaintiffs to pursue a farm brewery use and represented that the Town would support them in doing so.  Plaintiff Richard B. Griffin, Barbara's husband, to get her with Barbara A. Griffin jointly invested approximately $125,000.00 in the initial phase of the enterprise. Total initial investment in the brewery, including contributions by Plaintiff Cynthia M. Collins, reached $250,000.00. Richard B. Griffin served as the brewery's brewer as an employee.

7.    From 2017 through the present, Defendants have engaged in a continuous, systematic, and bad-faith pattern of selective enforcement, procedural obstruction, manufactured legal pretexts, and outright deception — targeting Plaintiffs while simultaneously exempting a directly comparable property, the Paris Hill Barn owned - by the Three Steeples United Church (hereinafter 'the Paris Hill Barn'), from all code and fire compliance requirements for identical assembly use.  This disparate treatment — documented in the Town's own records — was not accidental. It was the product of deliberate institutional decision-making, conducted in secret meetings and misuse of executive sessions beginning in May 2018, in which Town board members, the Town Supervisor, the Town Attorney, and the Code Enforcement Officer collectively determined to allow the Paris Hill Barn to operate as an assembly venue without permits, while simultaneously subjecting Plaintiffs' property to escalating and pretextual enforcement demands.

8. The depth of this conspiracy was not known to Plaintiffs until March 3, 2025, when Plaintiff Cynthia M. Collins, in the course of a FOIL review of town records, discovered a green file folder bearing handwritten notes in the handwriting of Defendant Code Enforcement Officer Gina LaMonte — memorializing three meetings in 2018 in which town officials discussed and decided to allow the Paris Hill Barn to open as an A-2 assembly venue without any code or fire compliance review and no CO. This document, in Defendant LaMonte's own hand, establishes beyond dispute that the discriminatory treatment of Plaintiffs was not a series of isolated bureaucratic errors, but a deliberate institutional policy conceived and implemented at the highest levels of Town government to deprive Plaintiffs of their constitutionally guaranteed rights to equal protections under the law in order to protect a "competing" non-farm business.

9. . The consequences for Plaintiffs have been catastrophic. A State Supreme Court preliminary injunction dated July 21, 2023 prohibited Plaintiffs from access to their own barn, processing harvested crops and closure of the farm brewery. Plaintiffs have been driven to the brink of financial ruin — not by the failure of their enterprise, but by the unlawful and unconstitutional acts of those entrusted with the impartial administration of the law. On May 1, 2026, a permanent injunction was entered based on the complaint's material misrepresentations with no evidentiary hearing.

10.. Plaintiffs bring this action to vindicate their rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, etc.,and to obtain just compensation for the destruction of their business, their livelihoods, and their property

rights at the hands of Defendants acting under color of state law.

## JURISDICTION AND VENUE

**11.** This Court has subject matter jurisdiction as a federal question over this action pursuant to 28 U.S.C. §§ 1331 and 1343, as this action arises under the Constitution and laws of the United States, specifically 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution and the First Amendment..

**12.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and b(2), as the events and omissions giving rise to the claims herein occurred within the Northern District of New York, Oneida County, and all Defendants reside or maintain their principal place of business within this District.

**13**. Section 1985(3) Conspiracy. This action further arises and provides a cause of action where two or more persons conspire for the purpose of depriving, either directly or indirectly, any person or class of person of the equal protections of the law, or of equal privileges and immunities under the laws, and one or more of the persons engaged therein does or causes  to be done any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the  United States.

**14.**   Attorney Fees.  This Court has authority to award attorneys fees and costs pursuant to 42 U.S.C. §1988, which provides that in any action to enforce a provision of 42 U.S.C. § 1983 or §1985, the Court, in its discretion, may allow the prevailing party a reasonable attorneys fee as part of the costs.

15.. This Court has supplemental jurisdiction over any state law claims asserted herein pursuant to 28 U.S.C. § 1367(a), as such claims are so related to Plaintiffs' federal claims as to form part of the same case or controversy.

## THE PARTIES

### Plaintiffs

16.. Plaintiff **THE COLLINS HOMESTEAD LLC** *i*s a New York limited liability company, organized and existing under the laws of the State of New York, holding the farm brewery license for T. Raymond Collins Brewery d/b/a Harry's Barn, and operating on property located at 1724 Holman City Rd. in the Town of Paris, Oneida County, New York.

17.. Plaintiff **CYNTHIA M. COLLINS** is an individual having a residence in the Town of Paris, Oneida County, New York. She is the owner of the farm property upon which the brewery and barn are located, and a Member of The Collins Homestead LLC. She brings this action in both her individual capacity and as a Member of the LLC.

18.. Plaintiff **BARBARA A. GRIFFIN** is an individual and a Member of The Collins Homestead LLC. She brings this action in her capacity as a Member of the LLC.

19. Plaintiff **RICHARD B. GRIFFIN** is an individual, the husband of Barbara A. Griffin, and a substantial investor in The Collins Homestead LLC. Together with

8

Barbara A. Griffin, he jointly invested approximately $125,000.00 in the initial phase of the enterprise; total start up investment in the brewery and farm operation, reached $250,000.00. Richard B. Griffin served as an employee and brewer of T. Raymond Collins Brewery and has been deprived of that employment since 2023 as a direct result of Defendants' unlawful conduct. He brings this action in his individual capacity.

### Defendants

20. Defendant **TOWN OF PARIS** is a municipal corporation organized and existing under the laws of the State of New York, located in Oneida County, New York. At all times relevant herein, the Town of Paris acted through its officials, employees, and agents, including the individual Defendants named herein. The Town is liable under **Monell v. Department of Social Services, 436 U.S. 658 (1978)**, for the constitutional violations described herein, which were carried out pursuant to the Town's official policy, custom, and practice.

21. Defendant **JAMES S. CHRISTIAN, JR**., also known as "**JC Christian"**, is and was at all relevant times the Town Supervisor of the Town of Paris. He is sued in both his official capacity and his individual capacity. Defendant Christian participated in the executive sessions and private meetings in which the decision to exempt the Paris Hill Barn from code compliance was made while advocating for the closure of Harry's Barn by signing  the verification on the Town's May 2023 state  court complaint — a complaint containing material misrepresentations he knew or should have known to be false, including the omission of Plaintiffs' valid farm brewery license and AML §

9

305-a state protections.

22.. Defendant **GINA LaMONTE** is and was at all relevant times the Code Enforcement Officer for the Town of Paris. She is sued in both her official capacity and her individual capacity.  Upon information and belief, Defendant LaMonte used her office and personal animus to Plaintiffs in 2018 and conducted a conspiracy with other Defendants under color of law to facilitate the selective enforcement to bypass the very laws she was appointed to uphold in a neutral and unbiased manner, as documented  in her own handwriting in notes discovered by Plaintiffs in March 2025, and used pretextual enforcement actions against Plaintiffs while exempting the Paris Hill Barn from identical requirements, for the intended purpose of deprive Plaintiffs of the protections afforded to them by the stated laws of the state and the country to and facilitating the pretextual grounds to deny Plaintiffs equal protection under the law. She also provided materially false testimony before the New York State Division of Buildings and Codes, misrepresenting the historical use and construction of the Paris Hill Barn in order to justify the Town's discriminatory exemption — testimony directly contradicted by the Paris Hill Barn's own property record card.

23. Defendant **MICHELE PARKER** is and was at all relevant times a Member of the Town Board of the Town of Paris. She is sued in both her official capacity and her individual capacity for participating in the 2018 executive sessions to exempt the Paris Hill Barn from code compliance knowing the law required otherwise.

24.. Defendant **KEVIN FAHY** was at all relevant times a Member of the Town Board of the Town of Paris. He is sued in his individual capacity. Defendant Fahy

participated in the 2018 executive sessions to exempt the Paris Hill Barn from code compliance knowing the law required otherwise.   His subsequent resignation from the Town Board does not extinguish his individual liability for acts committed during his tenure.

25.. Defendant **GARY TUTTLE** was at all relevant times a Member of the Town Board of the Town of Paris. He is sued in his individual capacity. Defendant Tuttle participated in the 2018 executive sessions and voted in favor of the unlawful exceptions granted to  the Paris Hill Barn, and participated in the pattern of targeted enforcement against Plaintiffs.    At all relevant times, upon information and belief, the Tuttle extended family are closely tied to the Paris Hill Barn owned by the Threes Steeples United church creating a conflict of interest suggesting favoritism and anti-competition.  His subsequent resignation from the Town Board does not extinguish his individual liability for acts committed during his tenure.

26.  Defendant **THOMAS O'BRIEN, ESQ**. is an attorney admitted to practice in the State of New York. He is sued in his individual capacity. O'Brien represented Plaintiffs Cynthia M. Collins and Barbara A. Griffin in a personal legal matter concerning the barn property in 2014-2015, during which he obtained confidential information regarding the property, its uses, and Plaintiffs' legal strategy — including, inter alia, Plaintiffs' consideration of grandfathering prior uses. In 2016, O'Brien notified Plaintiff Collins that he had been retained as Town Attorney and was not happy with the 2013 zoning ordinance.  He provided substantive legal advice to Plaintiff Collins regarding the ordinance's effect on Plaintiffs' property.   O'Brien continued to represent the Town

directly adverse to Plaintiffs interests without concern for his conflict of interest and without seeking or obtaining Plaintiffs' informed consent to the dual representation. At a Zoning Board of Appeals proceeding, O'Brien refused to recuse himself, and the Board voted to permit him to continue representing the Town over Plaintiffs' objection. This conduct constitutes a deprivation of Plaintiffs' due process rights and is actionable under § 1983.

27. Defendant **FELT EVANS, LLP** is a law firm retained by the Town of Paris as successor town counsel on or about January 5, 2023. As an entity acting under color of state law in its capacity as Town counsel, Felt Evans LLP is named as a Defendant with respect to the institutional conduct of its attorneys described herein.

28. Defendant **KENNETH L. BOBROW** is an attorney and partner or associate of Felt Evans LLP. He is sued in his individual capacity. Defendant Bobrow has handled the Town's litigation against Plaintiffs in state court by filing a verified complaint which failed to disclose the Plaintiffs' valid farm brewery license, the AML §305-a protections, two performance reviews showing prima facie code compliance, alleging zoning violations when Plaintiffs use was permitted as of right as an agricultural use and farm operation and a controlling state court opinion all intentional material misrepresentations meant to prejudice the assigned judge..

29. Defendant **ANTHONY G. HALLEK**. is an attorney and partner or associate of Felt Evans LLP serving as Town Attorney. He is sued in his individual capacity. Defendant Hallek contacted the New York State Liquor Authority in an effort to interfere with

Plaintiffs validly issued farm brewery license.   The NYSLA rejected same noting that the Town's permission was not required and referencing the Town's failure to object to Plaintiffs' April 14, 2020 letter of intent. Defendant Hallek has further sought and gloated over contempt of court findings arising out of restraints and injunction entered against Plaintiffs based those material misrepresentations to the Court. This conduct exceeds the bounds of legitimate litigation activity and constitutes knowing participation in the deprivation of Plaintiffs' constitutional rights.

**NOTE ON STATUTE OF LIMITATIONS AND CONTINUING VIOLATION**

30. The statute of limitations applicable to claims under 42 U.S.C. § 1983 in New York is three years. See **Owens v. Okure, 488 U.S. 235 (1989)**. The claims asserted herein arise from a continuous pattern of unconstitutional conduct by Defendants spanning from 2017 to the present.    Under the continuing violation doctrine, Plaintiffs are entitled to assert claims arising from the full course of Defendants' unlawful conduct, as each act was part of an ongoing discriminatory policy and practice rather than a series of discrete, isolated incidents.   Defendants initiated litigation against Plaintiffs on May 8, 2023, the first actual notice to Plaintiffs of Defendants' interference with a protected property right.  Knowledge of the extent of the Defendants' selective enforcement and serious  constitutional violations did not exist until the discovery of the green folder on March 3, 2025.   Until discovery of this document in a broader FOIL review of small business files, secreted at the bottom of an unrelated file box,  Plaintiffs had no knowledge that the Paris Hill Barn was a factor in the Town's conduct toward them. The Town's campaign of enforcement had been

13

deliberately concealed behind a pretext of code compliance and safety concerns, and the true motivation — the protection of the Paris Hill Barn from regulatory scrutiny and competition — only became apparent upon discovery of Defendant LaMonte's handwritten notes on the inside cover of the green file.  The discovery rule therefore tolls the limitations period as to all claims dependent upon knowledge of the discriminatory comparator and the institutional conspiracy underlying Defendants' conduct. The circumstances under which the green folder came to be accessible to Plaintiffs in the FOIL production remain under investigation. Plaintiffs expressly reserve all rights to assert additional tolling grounds in amendment.

## FACTUAL ALLEGATIONS

### Background: The Collins Family Farm and Harry's Barn

31. The Collins family farm is located in the Town of Paris, Oneida County, New York. The property has been in the Collins family for generations and includes a historic barn known as Harry's Barn, constructed in or about the 1850s, which Plaintiffs sought to adapt for lawful agricultural and assembly uses consistent with New York State law.

32.  Plaintiff Cynthia M. Collins owns the farm property and leases Harry's Barn to The Collins Homestead LLC. The LLC holds the farm brewery license for T. Raymond Collins Brewery d/b/a Harry's Barn. The brewery was named in honor of Plaintiffs' father, T. Raymond Collins, who spent his summers on the property as a boy.   Harry's

Barn is named after Plaintiffs' grandfather who was raised on this farm.

33.  At all relevant times, Plaintiffs operated or sought to operate a legitimate agricultural enterprise on the property, including hop cultivation, barley crops, orchard maintenance, and farm brewery operations — all qualifying uses under New York Agriculture and Markets Law.  The Town's Comprehensive Plan of 2014 requires support for farm related businesses.

34.  The Paris Hill Barn is a barn property in the Town of Paris owned by Three Steeples United Church (hereinafter Three Steeples). At all relevant times, Three Steeples operated the Paris Hill Barn as an A2 assembly venue - an identical use classification that Plaintiffs sought for Harry's Barn. The Paris Hill Barn and Harry's Barn are similarly situated properties subject to the same Town code and fire compliance requirements for assembly use. Upon information and belief, the Paris Hill Barn was opened to the public for assembly events including weddings as early as 2014, as evidenced by social media records available to Plaintiffs documenting public events at the property as early as 2016.

35.  Upon information and belief,  Defendant Gary Tuttle, a Member of the Town Board, had a direct familial conflict of interest with respect to the Paris Hill Barn: Tuttle's cousin was a director or official member of Three Steeples United Church, the owner of the Paris Hill Barn, and Tuttle's niece is employed scheduling events at the Paris Hill Barn.  Every town board member would have been aware of Tuttle's connection to the barn yet upon information and belief, he was fully involved in the vote or deliberation concerning the Paris Hill Barn, and actively participated in

15

the decisions that exempted the Paris Hill Barn from code and fire compliance while knowingly subjecting Plaintiffs to escalating enforcement as a town board member.

## II. The Pattern: Nine Years of Targeted Enforcement

36. From 2017 through the present, Defendants have engaged in a continuous, unbroken pattern of discriminatory and pretextual enforcement against Plaintiffs — manufacturing regulatory obstacles, moving goalposts on permit requirements, ignoring favorable agency findings, filing materially false litigation, and suppressing Plaintiffs' rights to use their own property — while simultaneously exempting the Paris Hill Barn from every requirement imposed on Plaintiffs.

37. This pattern was not the product of good-faith regulatory disagreement. It was the product of deliberate institutional decision-making conducted through executive sessions — the dates of which appear in the Town's own public meeting minutes — attended by the Town Supervisor, Town Board members, the Town Attorney, and the Code Enforcement Officer, beginning on May 9, 2018.   The use of executive session to discuss and decide the granting of a regulatory exemption to a private property owner for the personal benefit of a Board member's family constitutes a violation of the New York Open Meetings Law. Critically, Plaintiffs had filed their first application for A-2 assembly use in July 2017 — less than a year before the executive sessions began. Upon information and belief, the Paris Hill Barn had been operating as a public assembly and wedding venue as early as 2014 but most definitely in 2016.

16

Defendants' executive session deliberations beginning in May 2018 were most plausibly triggered by Plaintiffs' July 2017 application to open a barn event venue which created a competitive threat to the Paris Hill Barn and prompted Defendants to formalize and protect the Paris Hill Barn's non-compliant operations while insuring the Plaintiffs would never obtain equivalent approval.

38. The existence and scope of this conspiracy was concealed from Plaintiffs until March 3, 2025, when Plaintiff Cynthia M. Collins, conducting a FOIL review of Town records, discovered at the bottom of a file box a green file folder containing handwritten notes by Defendant Gina LaMonte. Those notes documented three separate meetings in 2018 — identifying the attendees, the subject matter discussed, and the decision to allow the barn to open as an A-2 assembly venue without permits. This document, created by Defendant in her own hand, constitutes direct evidence that the discriminatory treatment of Plaintiffs was the product of deliberate institutional policy, not administrative error.

39. Throughout the relevant period, Plaintiffs obtained two independent findings from separate governmental bodies that the Town's conduct was arbitrary and capricious: first, the New York State Department of Agriculture and Markets, which on June 16, 2021 issued a determination that Plaintiffs qualified for AML Section 305-a protections as a legitimate farm operation and that the Town's refusal to issue a permit for a farm worker cottage was arbitrary and capricious; and second, the Honorable David Murad of the New York State Supreme Court, who in April 2022 issued a Decision and Order finding that Plaintiffs' farm brewery was an agricultural use under the Town's zoning

17

ordinance and that the Town's demands that Plaintiffs waive agricultural exemptions were arbitrary and capricious. Despite these findings, Defendants escalated rather than remedied their unlawful conduct.

## III. Specific Acts of Constitutional Deprivation

### A. 2017: The Initial Submission and the First Suppression

40. In 2017, Plaintiffs, through their architect, filed a set of change of occupancy plans for Harry's Barn with the Town, accompanied by a performance review demonstrating that the barn achieved passing scores establishing prima facie existing code compliance. This submission was made in connection with Plaintiffs' stated intent to convert Harry's Barn to an A-2 assembly use as a barn wedding venue. Guests and short term renters had used the lawns for events.

41.. Defendant LaMonte received and had full knowledge of Plaintiffs' 2017 submission and their intent to seek A-2 assembly use. Rather than processing or acting on the submission, LaMonte ignored it — later compounded her misconduct by telling Plaintiffs' contractor in 2021 that she had never opened that submission and recently submitted to a state agency emails which appeared to have been "cut and pasted" allegedly sent to Plaintiffs architect who denies ever having received such an email. Emails would be legally deficient as a permit denial requires notice to the designer and the owner of a property by ordinary and certified mail.

42 . In July 2017, Defendant LaMonte advised Plaintiffs' architect that the Town

Attorney was working on a zoning amendment and that, in the interim, she would issue special event permits to Plaintiffs. This representation was illusory: the Town had no special permit local law, rendering the promised relief legally unavailable. This representation nonetheless induced Plaintiffs to refrain from pursuing other relief while their application remained unaddressed.

### B. May Through August 2018: The Secret Sessions and the Stop Work Order

43. On May 9, 2018, the Town held its first executive session to secretly discuss allowing the Paris Hill Barn to open as an A-2 assembly venue without any code or fire compliance review.    This executive session to discuss "legal matters" was attended by, among others, Defendants Christian, LaMonte, and members of the Town Board including Defendants Fahy, Tuttle, and Parker.

44.  That same month, while Defendants were secretly deliberating how to exempt the Paris Hill Barn from all compliance requirements, Defendant LaMonte was photographing Plaintiffs' workers performing routine maintenance and improvement work on Harry's Barn, including roof repairs, window installations, door installations, and construction of a catwalk providing access between the barn and the courtyard.

45.  In June and July 2018, the Town Board, Supervisor Christian, Defendant LaMonte, and then-Town Attorney O'Brien held additional meetings regarding the Paris Hill Barn. In July 2018, Defendants decided that because the Paris Hill Barn had hosted a flower show in 1917 and a second flower show in 1952 — the most recent

being 66 years before the 2018 decision — it was grandfathered as an assembly place and required no code or fire compliance for its current and expanded assembly use. This grandfathering rationale is legally defective on its face: New York law requires continuity of use to establish a valid non-conforming use, not isolated historical events separated by decades. Two flower shows — in 1917 and 1952 — with no evidence of any intervening continuous assembly use cannot establish a grandfather right.   This decision was made without a formal vote, without a resolution, and without the procedural safeguards required by the town zoning ordinance for such a determination.

46.   On August 8, 2018, the Town Board convened an executive session lasting over an hour,  nominally to discuss "Legal matters."  Plaintiffs believe and allege that this session was used to communicate the Paris Hill Barn exemption decision to the full Board membership, again without a public vote or resolution as required by the New York Open Meetings Law.   The public was thereby also left in the dark.

47.   Also in August 2018 —after the town board executive session,  having spent the preceding months covertly arranging the Paris Hill Barn exemption — Defendants issued a Stop Work Order against Plaintiffs, demanding that they obtain permits and submit engineering plans for the routine maintenance and improvement work Defendant LaMonte had photographed a few months before.   No comparable enforcement action was ever taken against the Paris Hill Barn at any time.

48.    Plaintiffs ultimately obtained a building permit and an agricultural permit after retaining counsel to wade through the application process by the attorneys..

20

Defendant LaMonte conducted a few inspections and then ceased all such activity without explanation. A subsequent FOIL revealed that LaMonte's own notes stated that because the structure was a barn, she did not need to inspect it: building permits require inspection and the issuance of a CO - Plaintiffs were denied this procedural benefit.   The entire exercise bore a financial burden on Plaintiffs for engineering plans and extra time their contractor needed to expend which had never been imposed upon the Paris Hill Barn.  The issuance of those permits and the Town's waiver of further inspections are documented in the Town's own records. Notwithstanding this documentation, Defendants Christian, LaMonte, Bobrow, and Hallek have repeatedly represented to courts, agencies, and others that Plaintiffs never apply for permits — a representation that is demonstrably and knowingly false on the face of the Town's own files.   Plaintiffs have filed multiple additional permit applications throughout the relevant period, some of which has been either denied on pretextual grounds or ignored entirely enabling the Defendants  fiction of Plaintiffs' non-compliance.

### C. 2019: The Planning Board Denial and the Supervisor's Invitation

**49**. In July 2019, Plaintiffs appeared before the Town Planning Board to seek a zoning amendment permitting Harry's Barn to be used as a wedding venue — a use not then permitted under the Town's zoning ordinance.   The Planning Board was hostile to Plaintiffs' application and denied it.   The chairman cited the comprehensive plan requirement to protect agricultural uses and stated that the Town already had a barn wedding venue.   Plaintiffs did not know at the time that this reference was to the

Paris Hill Barn - but they learned that it was a direct reference and presumptively to thwart competition while a simple denial because of the zoning ordinance was sufficient.   The chairman's misplaced hostility to Plaintiffs is now understood as another town board protecting not the zoning ordinance and comprehensive plan, but rather insuring the Paris HIll Barn would remain the only event barn in town. Controlling competition is not a land-use fact and by stating it,  established the lack of a rational basis thus denying Plaintiffs another neutral arbiter.

50.. In September or October 2019, Supervisor Christian personally invited Plaintiffs to meet with him. At that meeting, Christian apologized for the Planning Board's conduct and during that meeting, the town officials expressly encouraged Plaintiffs to pursue a farm brewery as an alternative use — representing that such a use would permit weddings as part of marketing and promotion, and that the Town would support Plaintiffs in that endeavor. Plaintiffs reasonably and justifiably relied upon this supportive suggestion and agreed to think about it.

**D. 2020 Through 2021: The Brewery Investment, the State Victory, and the Town's Escalation**

51. On April 14, 2020, Plaintiffs' attorney sent the Town a detailed multi-page letter advising that Plaintiffs were moving forward with the farm brewery and providing a full outline of their method of operation, crops, and plans. This letter placed the Town on formal written notice of Plaintiffs' intentions.

52.  On May 13, 2020, during an executive session lasting approximately eight minutes, the Town Board discussed Plaintiffs' detailed proposal as a "legal" matter.

22

The Town attorney thereafter advised Plaintiffs' attorney that it would not be taking any action. Plaintiffs reasonably interpreted this non-response as acquiescence and proceeded in justifiable reliance upon the Town's silence.

53.  Plaintiffs began to make substantial investments in the farm brewery enterprise, including purchasing materials for the installation of a hop trellis, orchard maintenance, retaining the services  of a local farmer to assist with barley cultivation, purchase of brewery equipment, and clearing of land for a farm worker cottage for a cousin being relocated from Florida to aid in the project.. Plaintiff Richard B. Griffin in joint confidence with Plaintiff, Barbara A. Griffin, his wife, invested substantially towards the approximate $250,000.00 in the enterprise and committed to serve as its brewer.

54.  By October 2020, the Town had reversed course entirely, objecting not only to the farm worker cottage but to the brewery itself. Among the rationales advanced by Town officials was the position that Plaintiff Cynthia M. Collins, a professional woman, could not simultaneously qualify as a farmer.    Plaintiffs' attorney filed an immediate complaint with the New York State Department of Agriculture and Markets.

55.. Following a seven-month investigation, on June 16, 2021, the New York State Department of Agriculture and Markets issued a written determination: (a) granting Plaintiffs AML Section 305-a protections as a qualifying start-up farm operation;(b) that portions of the zoning ordinance did not comply with AML and (c) finding that the Town's reasoning for refusal to issue a permit for the farm worker cottage was not in compliance with the intent of AML but if they had any proofs of public health and

safety as risk because of a cottage,  they would need to provide it.    Defendants did not comply. They escalated.

**E. August 2021 Through April 2022: Obstruction, Manufactured Barriers, and the Court Victory**

56.  On August 21, 2021, after Defendant LaMonte agreed to conduct a walkthrough of Harry's Barn with Plaintiffs, their contractor, their engineer, and their architect, abruptly cancelled two days before the scheduled walkthrough by calling  Plaintiffs' contractor and advising inspection was not her responsibility and that she had been directed by the Town Attorney not to attend - a deliberate act of obstruction.

57. In mid-September 2021,  upon direction of Defendant LaMonte, Plaintiffs personally delivered permit applications and associated fees to her desk for the change of occupancy and related permits.    Requests for occupancy numbers were of importance to Plaintiffs as adequate egress was a major safety factor.

58. On December 6, 2021, Defendant LaMonte demanded in a letter that before she would address occupancy, Plaintiffs must comply with zoning requirements from which they were exempt,  for construction documents and a performance review (confirming that she had never looked at the 2017 submissions). Plaintiffs' attorney responded advising that agricultural uses are expressly exempt from site plan and SWPPP requirements under New York law. The Town refused to relent.    It is worth noting that at that point in time,  the Paris Hill Barn had been operating its A2 assembly for 140 occupants without having ever submitted anything to Defendant LaMonte to review and approve.   Occupancy has never been resolved.

59. Plaintiffs were compelled to seek relief before the Zoning Board of Appeals, which ruled against them, requiring the filing of an Article 78 proceeding in April 2022 (Index No. EFCA2022-000952).  The Town responded with Defendant LaMonte's jurisdictionally deficient Stop Work Order dated May 31, 2022 alleging vague actions but no specific and mandatory reference to what work was being done that needed a permit.    On August 17, 2022, the Honorable David A. Murad, JSC  issued a Decision on Motion and Order upholding the Dept of Ag & Markets determination that Plaintiffs operate a farm for the purposes of AML §305-a and "the Town's determination that a site plan review is necessary is **arbitrary and**

 **capricious** under its Zoning Law." and the "Town's requirement of a site plan review…is annulled, vacated and reversed."   In a fit of good faith,  Plaintiffs submitted a short version of a SWPPP to the NYS DEC and was advised the farm operation was exempt.   In its usual posturing of defiance,  Defendants continue to demand site plan approval and SWPPP approval. .

  **F. January 2023 Through Present: Litigation, Licensing Interference, and Unlawful Exclusion**

60. On December 31, 2022, the Town terminated the representation of Thomas O'Brien, Esq. as Town Attorney. On January 5, 2023, the Town retained Defendant Felt Evans LLP as successor town counsel. Almost immediately, Defendant Hallek contacted the New York State Liquor Authority to challenge Plaintiffs' validly issued farm brewery license — including the false allegation that Plaintiff Collins' answer on the NYSLA Premises Questionnaire, in which she responded affirmatively to

25

whether zoning permitted the anticipated use, was false. That answer was fully justified by the AML § 305-a determination establishing Plaintiffs' farm operation as a protected agricultural use, and by the farm brewery license statute itself. The NYSLA rejected Hallek's challenge entirely, advising the Town that its permission was not required for the issuance of a farm brewery license and specifically referencing the Town's failure to object to the April 14, 2020 letter of intent. Upon information and belief, Defendants Felt Evans LLP, Bobrow nor Hallek conducted any meaningful due diligence before filing the May 8, 2023 complaint. Even a cursory review of the Code Officer's own file as it existed in 2023 would have revealed two satisfactory performance reviews, an engineer's structural report confirming Harry's Barn to be sound and safe, permit applications, and issued permits — all directly contradicting the Town's representations that Plaintiffs never apply for permits and that Harry's Barn is unsafe. Upon information and belief, neither the Town's counsel nor the state court has reviewed the New York Farm Brewery License statute or the Department of Agriculture and Markets guidelines applicable to farm brewery operations, both of which Plaintiffs filed repeatedly in the state court proceedings.

61. On May 8, 2023, the Town, through Defendants Felt Evans LLP and Bobrow, filed a complaint against Plaintiffs in New York State Supreme Court. The complaint contained material misrepresentations, alleging Plaintiffs "have not applied for" nor acquired variances and/or permits from the Town which are necessary to legally operate on the Property, characterizing Plaintiffs as operating an unpermitted bar or

26

tavern while deliberately omitting any reference to Plaintiffs' valid farm brewery license, their AML Section 305-a protections nor the Article 78 Decision by Judge Murad. Defendant Supervisor Christian, who had been copied on all relevant correspondence and had personal knowledge of both the NYSLA farm brewery license which permitted the very use the Plaintiffs were conducting, nevertheless signed the verification on this complaint under oath contrary to his personal knowledge that the allegations were false and frivolous.

62. On July 21, 2023, without an evidentiary hearing, the state court entered an order prohibiting Plaintiffs from entering their own barn, processing their crops nor allowing them to comply with the requirements of their liquor license and produce 50 barrels annually of beer and cider. That order was converted to a permanent injunction on May 1, 2026 after almost a two year delay and no notice from the court that a decision would be issued allowing the parties to update the court. No evidentiary hearing has been held despite a request from Plaintiffs' counsel. Plaintiffs are now permanently enjoined from their own property with literally no due process. Notably, the Court Order admitted the Town suffered no loss and assessed counsel fees against Plaintiffs' brewery while recognizing the brewery has no income - a direct consequence of the injunctive relief resulting from Defendants' litigation. Further, the two local laws upon which entire litigation was predicated were repealed in their entirety by Local Law #1 of 2025 enacted on December 9, 2025 and filed with the NYS Dept of State on December 26, 2025. The new local law contains no reservation of pending cases and expressly supersedes the

27

repealed laws.   Defendants Hallek and Bobrow were at all times aware of the repeal and failed to disclose it to the court despite the repeals rendering any injunction "moot".

**63**.. Defendants  Hallek and Bobrow have repeatedly sought and obtained contempt findings against Plaintiffs despite never asserting any element of harm to the Town.

As a direct result of Defendants' conduct, Plaintiffs' brewery has been shuttered, crops have rotted in the fields and in storage,  kegged beer and cider have lost carbonation and had to be destroyed, and Plaintiff Richard B. Griffin has been without employment since 2023. Plaintiffs have been driven to the brink of financial ruin not by the failure of their enterprise, but by the unlawful acts of Defendants acting under color of state law.

**G. October 2023 Through March 2025: The FOIL Investigation and the Discovery of the Green Folder**

**64**.  On October 3, 2023, Plaintiff Collins served a FOIL on the town clerk asking for, among other things, ***"Copies of Permit applications (exclude plan and estimates), issued permits, notations of inspections and Certificate of Compliance or Occupancy for the Paris Hill Barn & Cafe."***   This inquiry was prompted by a supporter asking why Harry's Barn was closed and the Paris Hill Barn was open. Plaintiffs had never heard of the Paris Hill Barn.   The underlying motive was to ascertain what the Paris Hill Barn had done to open and to match those efforts.  On November 8, 2023, the Town Clerk advised Plaintiff Collins that the Town "is not in possession of documents which are responsive to your request."   On December 20,

2023, at a status conference on the pending litigation,  the Judge reviewed the case: *"The town came in here and asked for a restraining order because the business was operating without a building permit.  There is such an order in place.  I have limited authority here.  At the same time, **I'm not looking to invite another lawsuit by the defendants who say they're not being treated equally under the law and that their permit application is being vetted in a way that most others aren't."***   The Court seemed aware of the subject matter of the FOIL.

65. In 2024, after visiting the Paris Hill Barn and observing that it is of heavy timber construction identical to that of Harry's Barn, Plaintiff Collins  conducted a comparative FOIL investigation of records relating to seven other businesses in the Town to assess the Town's permitting and compliance practices with respect to similarly situated small businesses and other such operations, including once again the Paris Hill Barn.

66. On March 3, 2025, at the bottom of a file box of Town records obtained through FOIL, Plaintiff Collins discovered a green file folder. Written in the handwriting of Defendant Gina LaMonte on the inside cover of that folder were notes from three meetings in 2018 — identifying attendees and documenting that the meetings concerned the decision to allow the barn to open as an A-2 assembly venue without permits, code compliance nor a CO.  This document constitutes direct, contemporaneous evidence of the institutional conspiracy alleged herein.

67.   In May 2025,  Plaintiff Collins was advised by a county political committee that a member of the Paris Planning Board, Charles Tibbitts, was making harassing phone

calls demanding Collins' cell phone number.  The committee chair and vice chair met with the caller.   The vitriol expressed against Collins was perceived as threatening as was the board member advising "no matter what Harry's Barn does, they will never get a CO."

### H. January 14, 2026: False Testimony Before the New York State Division of Buildings and Codes

68. On January 14, 2026, a hearing was held before the New York State Division of Building Standards and Codes on Plaintiffs' appeal of the denial of their performance review submissions. Prior to the hearing, the Town submitted a 1,203-page response to Plaintiffs' petition. That submission was not provided to Plaintiffs in advance of the hearing, depriving Plaintiffs of any meaningful opportunity to review and respond to the Town's submissions before the board that would decide their appeal.

69.. At the January 14, 2026 hearing in front of a NYS State Agency, a DBSC Regional Board,  Defendant LaMonte appeared and volunteered testimony to counter Plaintiff Collins' assertion that she had assumed a scorched earth selective enforcement policy with Harry's Barn.  Defendant LaMonte then explained that she investigated the other barn in 2017 but it wasn't a barn,  that it had been built as an assembly building and historical documents show they had flower shows, dances…so "it was always an assembly building.  They were never a barn. So it wasn't a barn that was changed into an assembly building."  Therefore, "a total different building."

70. This testimony was knowingly false. Following the hearing, Plaintiff Collins

FOILed the property record card for the Paris Hill Barn and the records of Three Steeples United Church. Those records establish that the Paris Hill Barn has been assessed throughout its history as a barn — never as an assembly building.  And the referenced historical documents referred to the "large hitching barn." Defendant LaMonte's testimony before the state agency was a deliberate misrepresentation, made to justify a years-long pattern of discriminatory favoritism toward the Paris Hill Barn and to defeat Plaintiffs' appeal before the state agency.

71.. By the time of the January 14, 2026 hearing, Plaintiffs had submitted five separate performance reviews of Harry's Barn, using all recognized construction methodologies — including a heavy timber review specifically demanded by Defendant LaMonte.  A second independent architect  also found compliance. Each review was rejected by Defendant LaMonte on grounds that Plaintiffs' architect characterized as technically baseless — including, notably, a demand that the exterior deck and catwalk be equipped with sprinkler systems, a requirement that has no application to open exterior structures under any recognized code. The repeated submission and rejection of performance reviews caused Plaintiffs to incur substantial architectural and engineering expense, all rendered futile by Defendant LaMonte's bad-faith and unsupportable rejections.

72.   Prior to the January 14, 2026 hearing, the Division of Building Standards and Codes, through its Director John Addario, P.E., issued a directive requiring Plaintiffs to redact the name, stamp, and seal of their architect, Thomas J. DiTullio, RA, NYSCCEO, from every document submitted as an exhibit to their petition, citing

Public Officers Law § 74. This directive was issued in the context of a coordinated series of communications between Defendant Bobrow, Defendant LaMonte, and Director Addario, in which Defendants monitored and reported on Plaintiffs' litigation to a state agency official whose agency was simultaneously adjudicating Plaintiffs' administrative appeal. Those communications included: Defendant Bobrow emailing Plaintiffs' Article 78 petition to Director Addario on May 7, 2024; a May 22, 2024 communication advising Addario that DiTullio had appeared at a court conference and the judge refused to let him speak; and a July 15, 2024 communication advising Addario of Plaintiffs' Article 78 to compel issuance of a Certificate of Occupancy and referencing DiTullio's prior affidavits. The April 15, 2025 § 74 directive issued by Addario was the direct product of this coordination and effectively neutralized Plaintiffs' most qualified expert before their administrative appeal hearing.

73. At the January 14, 2026 hearing, the state agency board commented that it was unfortunate Plaintiffs' architect was unavailable. DiTullio was not unavailable. Upon information and belief, DiTullio had been advised that his appearance at the hearing would put his professional license at risk — a threat that effectively silenced Plaintiffs' expert and denied Plaintiffs the benefit of his testimony before the very body deciding their appeal. Simultaneously, every document that Plaintiffs had been required to redact or exclude under the § 74 directive was submitted by Defendant LaMonte in the Town's 1,203-page reply without redaction — revealing that the redaction requirement was applied selectively against Plaintiffs and their architect, not as a neutral policy.

74. Upon information and belief, in early 2025 or late 2024, the Town Board convened to discuss DiTullio's professional license in retaliation for his work on behalf of Plaintiffs. Consistent with that decision, professional disciplinary complaints were thereafter filed against DiTullio.. The disciplinary complaints reference Plaintiff Collins by name repeatedly which confirms the proceedings are directed at punishing DiTullio for his association with Plaintiffs rather than addressing any legitimate professional concern. The retaliatory campaign against DiTullio directly and measurably harmed Plaintiffs by depriving them of their most qualified expert witness and litigation support in both the administrative and judicial proceedings against them.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## Violation of the Equal Protection Clause of the Fourteenth Amendment Selective Enforcement — 42 U.S.C. § 1983

## (Against All Defendants)

75. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 69 as if fully set forth herein.

76.. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits state actors from enforcing laws and regulations in a deliberately discriminatory manner — selectively applying the law against some while

exempting similarly situated others without rational basis.

77. At all relevant times, Plaintiffs and the Paris Hill Barn were similarly situated: both were barn properties in the Town of Paris seeking to operate as A-2 assembly venues. Both were subject to the same Town code, fire safety, and zoning requirements for assembly use.

78. Defendants treated Plaintiffs and the Paris Hill Barn in a diametrically and deliberately opposite manner. Defendants subjected Plaintiffs to escalating, pretextual, and bad-faith enforcement demands — including Stop Work Orders, permit denials, site plan requirements, SWPPP demands, rejection of five separate passing performance reviews, cancellation of scheduled inspections, and ultimately a court order excluding Plaintiffs from their own property — while simultaneously exempting the Paris Hill Barn from every code, fire safety, and zoning requirement applicable to assembly use, without any compliance review whatsoever.

79. This discriminatory treatment was not the product of legitimate regulatory judgment. It was the product of a deliberate institutional decision made in executive sessions beginning in May 2018, attended by Defendants Christian, LaMonte, Parker, Fahy, Tuttle, and the then-Town Attorney, to exempt the Paris Hill Barn from all compliance requirements — a decision presumptively driven in material part by the familial conflict of interest of Defendant Tuttle.

80. Defendants' selective enforcement had no rational basis and was motivated by illegitimate considerations including personal favoritism, familial benefit, competitive suppression of Plaintiffs' enterprise, and retaliation for Plaintiffs' exercise of their

34

constitutional and statutory rights.

81. As a direct and proximate result of Defendants' violation of the Equal

Protection Clause, Plaintiffs have suffered damages including but not limited to:

destruction of their business enterprise, loss of investment, loss of income, loss of

employment, crop losses, legal fees, and severe emotional distress, in an amount

to be determined at trial.

## SECOND CAUSE OF ACTION

### Violation of Substantive Due Process — Fourteenth Amendment

### 42 U.S.C. § 1983

### (Against All Defendants)

82. Plaintiffs reallege and incorporate by reference each and every allegation

contained in paragraphs 1 through 76 as if fully set forth herein.

83. The Due Process Clause of the Fourteenth Amendment protects individuals

against arbitrary, conscience-shocking governmental conduct that deprives them of

life, liberty, or property without a rational basis legitimately connected to a

governmental interest.

84. Plaintiffs possessed constitutionally protected property and liberty interests in the

operation of their farm brewery enterprise, in their real property, in their state-issued

farm brewery license, in the protections afforded by AML § 305-a, and in their right to

pursue a lawful agricultural and farm-based retail commercial enterprise on their own

35

land.

85. Defendants' conduct — including the deliberate suppression of Plaintiffs' permit applications, the rejection of five passing performance reviews on pretextual grounds, the cancellation of a scheduled inspection at the direction of the Town Attorney, the filing of a materially false state court complaint, the procurement of a court order excluding Plaintiffs from their own property without an evidentiary hearing, and the interference with Plaintiffs' state-issued brewery license — was arbitrary, capricious, and conscience-shocking, without rational basis, and bore no legitimate relationship to any valid governmental interest.

86. Defendants' conduct was further rendered arbitrary and capricious by two independent governmental findings — the June 16, 2021 Ag & Markets determination and the August  2022 Decision and Order of the Honorable David Murad — both of which Defendants ignored and defied rather than comply.

87. As a direct and proximate result of Defendants' violation of Plaintiffs' substantive due process rights, Plaintiffs have suffered damages in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**

**Violation of Procedural Due Process — Fourteenth Amendment**

**42 U.S.C. § 1983**

**Against All Defendants)**

88.    Plaintiffs reallege and incorporate by reference each and every allegation

contained in paragraphs 1 through 82 as if fully set forth herein.

89.  The Due Process Clause of the Fourteenth Amendment requires that before the government deprives an individual of a constitutionally protected property or liberty interest, it must provide notice and a meaningful opportunity to be heard.

90. Plaintiffs possessed protected property and liberty interests as described in paragraph 79 herein.

91. Defendants deprived Plaintiffs of those interests without adequate process, including but not limited to: the issuance of a Stop Work Orders without prior notice or hearing; the refusal to process permit applications without explanation or hearing; the procurement of a state court order on July 23, 2023 excluding Plaintiffs from their own property without an evidentiary hearing; the withholding of the Town's 1,203-page submission to the Division of Buildings and Codes until after the January 14, 2026 hearing; the exclusion of Plaintiffs' architect from the January 14, 2026 hearing through threats to his professional license; and the systematic failure to provide Plaintiffs with any meaningful opportunity to respond to the Town's pretextual enforcement demands before adverse action was taken.

92. Defendant O'Brien's continued representation of the Town in proceedings directly adverse to Plaintiffs, notwithstanding his prior representation of Plaintiffs and his possession of confidential information obtained in that representation, further deprived Plaintiffs of their due process right to a fair and untainted proceeding.

93. As a direct and proximate result of Defendants' violation of Plaintiffs' procedural due process rights, Plaintiffs have suffered damages in an amount to

37

be determined at trial.

## FOURTH CAUSE OF ACTION
## First Amendment Retaliation — 42 U.S.C. § 1983
## (Against All Defendants)

94. Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 88 as if fully set forth herein.

95.  The First Amendment to the United States Constitution, as incorporated against the states through the Fourteenth Amendment, protects the rights of individuals to petition the government for redress of grievances, to seek judicial relief, and to exercise rights of access to governmental processes without suffering retaliation therefore.

96.. Plaintiffs engaged in constitutionally protected activity throughout the relevant period, including: filing permit applications and administrative appeals; filing a complaint with the New York State Department of Agriculture and Markets; pursuing Article 78 proceedings in state court; submitting FOIL requests; and filing this action.

97. Each time Plaintiffs exercised a protected right and achieved a favorable result, Defendants responded with escalation rather than compliance. Following the June 2021 Ag & Markets determination, Defendants intensified enforcement. Following Judge Murad's August 2022 Decision and Order, Defendants ignored the ruling and filed a materially false state court complaint.   Defendants even found it necessary to interfere with Plaintiffs' successful liquor license approval and filed an "unsafe"

building cause of action having literally no evidence Harry's Barn was unsafe.

98. Defendants' retaliatory conduct extended beyond Plaintiffs to their professional associates. Upon information and belief, Defendants caused or initiated professional disciplinary proceedings against Plaintiffs' architect — who had prepared four out of five passing performance reviews and served as Plaintiffs' expert — in retaliation for his association with and assistance to Plaintiffs. Those proceedings resulted in the architect's probation and his effective removal as Plaintiffs' expert witness and litigation support, directly impairing Plaintiffs' ability to defend themselves and pursue their claims. The disciplinary and ethics complaints against the architect reference Plaintiff Collins by name repeatedly, confirming that the proceedings are directed at punishing association with Plaintiffs rather than addressing any legitimate professional concern.

99. A causal connection exists between Plaintiffs' protected activity and Defendants' adverse conduct, as evidenced by the consistent pattern of escalation following each exercise of protected rights and the temporal proximity between Plaintiffs' protected activities and Defendants' retaliatory responses.

100.    As a direct and proximate result of Defendants' First Amendment retaliation, Plaintiffs have suffered damages in an amount to be determined at trial.


**FIFTH CAUSE OF ACTION**
**Municipal Liability — Monell v. Department of Social Services**
**42 U.S.C. § 1983**
**(Against Defendant Town of Paris)**

**101.** Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 95 as if fully set forth herein.

**102.**   Under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), a municipality is liable under 42 U.S.C. § 1983 when a constitutional deprivation results from an official policy, a well-settled custom or practice, or a decision by a final policymaker.

**103**. The constitutional violations described herein were not the acts of a rogue employee. They were the product of official Town policy and custom, established and carried out by final policymakers including the Town Supervisor, the Town Board, the Town Attorney, and the Code Enforcement Officer — acting collectively and in concert.   The Planning Board and Zoning Board of Appeals are complicit, as well.

**104.**   The Town's unconstitutional policy and custom is established by, among other things: the series of executive sessions beginning in May 2018 at which Town leadership collectively decided to exempt the Paris Hill Barn from all code compliance while subjecting Plaintiffs to escalating enforcement; the continued ratification of LaMonte's pretextual enforcement conduct across multiple Town Attorneys and Town Board compositions over nine years; the filing of a materially false state court complaint verified by the Town Supervisor; the Town's interference with Plaintiffs' state-issued brewery license; and the Town's defiance of two separate governmental findings that its conduct was arbitrary and capricious.

**105.**   The persistence of this conduct across multiple Town Attorneys, multiple Town

Board members, and nearly a decade establishes that the constitutional violations were not isolated incidents but a deeply embedded institutional practice.

106.   As a direct and proximate result of the Town of Paris's unconstitutional policies, customs, and practices, Plaintiffs have suffered damages in an amount to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Malicious Prosecution — 42 U.S.C. § 1983**
**(Against Defendants Christian, Bobrow, Hallek, and Felt Evans LLP)**

107 . Plaintiffs reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 101 as if fully set forth herein.

108. To establish a claim for malicious prosecution under § 1983, a plaintiff must show: (1) the defendant initiated or continued a prosecution against the plaintiff; (2) the defendant acted with malice; (3) without probable cause; (4) the proceeding terminated in plaintiff's favor or continues without legal basis; and (5) plaintiff suffered a deprivation of liberty or property.

109 . On May 8, 2023, Defendants Christian, Bobrow, Hallek, and Felt Evans LLP initiated state court proceedings against Plaintiffs by filing a complaint that contained material misrepresentations — characterizing Plaintiffs as operating an unpermitted bar or tavern while deliberately omitting Plaintiffs' valid New York State farm brewery license, the June 2021 Ag & Markets determination granting AML § 305-a protections, and the August 2022 Decision and Order of the Honorable David A. Murad finding Plaintiffs' use to be agricultural and exempt from the Town's permitting demands.

41

110.   Defendant Christian, as Town Supervisor, signed the verification on the May 2023 complaint with full knowledge of its material omissions and misrepresentations.

111.   Defendants acted with malice, as evidenced by: the deliberate omission of favorable governmental determinations known to Defendants; the false characterization of a licensed farm brewery as an unpermitted bar; the continued prosecution of the action notwithstanding Defendants' knowledge of the farm brewery license and the judicial and administrative findings in Plaintiffs' favor; and the pattern of escalating conduct against Plaintiffs following each exercise of their legal rights and failing to advise the State Court the predicate laws had been voided.

112.   The lack of probable cause to initiate any litigation is established by the complaint characterizing Plaintiffs' operation as everything other than a permitted as of right farm operation with AML §305-a protections.  Defendant LaMonte's conscious disregard for the owner's procedural due process rights and her willful deprivation of their Constitutional rights to occupy a building they own or rent" CANNOT be taken away without "due process" of law yet filed affidavits demanding the state court do just that.

113.. As a direct and proximate result of the malicious prosecution, Plaintiffs suffered a severe deprivation of their property rights, including a court order entered on July 23, 2023 excluding Plaintiffs from their own barn without an evidentiary hearing — an order that remains in effect to this day.

114. As a direct and proximate result of Defendants' malicious prosecution, Plaintiffs have suffered damages including but not limited to loss of business, loss

of income, crop losses, legal fees, and emotional distress, in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs **THE COLLINS HOMESTEAD LLC, T. RAYMOND COLLINS BREWERY d/b/a HARRY'S BARN, CYNTHIA M. COLLINS, BARBARA A. GRIFFIN, and RICHARD B. GRIFFIN** respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

**A.** A declaration that Defendants' conduct as described herein violated Plaintiffs' rights under the Equal Protection Clause, the Due Process Clause, and the First Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983;

**B.** Preliminary and permanent injunctive relief: (i) immediately vacating and dissolving the state court orders of July 23, 2023 and May 1, 2026 as to the imposition of a permanent injunction; (ii) enjoining Defendants from continuing to enforce or apply any local  law, code or ordinance or permitting requirement against Plaintiffs that is has not been enforced against similarly situated properties in the Town of Paris, including without limitation the Paris Hill Barn; and (iii) enjoining Defendants from taking any further retaliatory action against Plaintiffs,  their professional associates and witnesses; and (iv.) issuing Plaintiffs a Certificate of Occupancy for the opening of Harry's Barn taproom; and

**C**. Compensatory damages in an amount to be determined at trial, including but not

43

limited to: lost business income and profits; destruction of the farm brewery enterprise; loss of investment including the $250,000.00 contributed by Plaintiffs Collins, Griffin, and Griffin; crop losses; architectural, engineering, and legal fees incurred as a result of Defendants' conduct; and loss of employment by Plaintiff Richard B. Griffin;

**D**. Punitive damages against the individual Defendants in their individual capacities, in an amount sufficient to punish the deliberate, bad-faith, and conscience-shocking conduct described herein and to deter similar conduct in the future;

**E**. An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988;

**F**. Pre-judgment and post-judgment interest as permitted by law; and

**G**. Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  May 5, 2026

Respectfully submitted,

Cynthia M. Collins

Plaintiff Pro Se and Attorney for Plaintiffs
NDNY Bar Admission No.:  844618
1724 Holman City Rd.
Clayville, New York   13322
Tel:   973-827-1124
Email:  cmcollinslaw@gmail.com

44